IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:22-CR-00229-M

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DARON OWENS,<br><br>    Defendant. | ORDER |

This matter comes before the court on Defendant's motion to dismiss and motion to suppress [DE 21; DE 22]. The court held a hearing on Defendant's motions on January 8, 2024. DE 39. At the conclusion of the hearing, the court DENIED Defendant's motions. *See id.* This order memorializes that ruling.[1]

## I. Factual Background[2]

Defendant is charged with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). DE 1 at 1. On November 24, 2021, the Fayetteville Police Department ("FPD") responded to reports of a shooting at the intersection of Bragg Boulevard and Greenland Drive. DE 21 at 2. Officers found a vehicle stranded in the median that had multiple bullet holes in the passenger side of the vehicle. *Id.* Officers spoke with the occupants of the vehicle – the driver

---

[1] This order also incorporates by reference its oral finds of fact and conclusions of law.
[2] The facts are derived from the parties' respective papers to the extent those facts were corroborated by exhibits and/or witness testimony at the hearing. Where facts are in dispute or otherwise uncertain, the court will indicate as such.

1

was unharmed, but the passenger suffered several gunshot wounds and had to be taken to the hospital. *Id.*[3]

The driver of the vehicle was ultimately taken into custody. While in custody, he was interviewed by Detective Berrios, the affiant for the search warrants at issue here. During that interview, the driver reported that he had not had any recent arguments with anyone, but that the passenger in his vehicle had a reputation as a "loudmouth" and a "snitch." DE 30 at 2.

As part of their investigation, FPD also obtained footage from traffic cameras in the area and identified the suspect vehicle as a blue Jeep Compass with Virginia tags. *Id.* at 1. The vehicle had been reported as stolen a few days prior to the shooting. Officers used the traffic camera footage to capture a still image of the Jeep Compass and its occupants, and created a "Be on the Lookout" ("BOLO") poster. *Id.* The BOLO poster stated that the driver of the Jeep Compass was a black male, age 15 to 20's, who was wearing a white hoodie and blue surgical face mask. *Id.* at 2.[4] It is undisputed that FPD failed to preserve the traffic camera footage, in violation of department policy.

Given the driver's allegation that the passenger in his vehicle had a reputation as a snitch, Detective Berrios examined the shooting victim's criminal record. DE 30 at 3. That review uncovered that the individual had a history of theft offenses in which Defendant was a co-conspirator. *Id.* Detective Berrios then searched for Defendant's criminal record and learned that he had been released from the Cumberland County Detention Center on November 24, approximately one hour before the shooting. *Id.* Detective Berrios then obtained footage from

---

[3] At the hearing, counsel for Defendant suggested that a recorded 9-1-1 call may indicate the caller's perception that the two vehicles were exchanging gunfire. But the record reflects that only one vehicle sustained damage from gunfire, and only one vehicle's occupant was shot.

[4] Detective Berrios testified that she did not create the BOLO poster, and that it was produced by her training officer. The BOLO poster also indicated that the other occupant of the vehicle was a black male, but Detective Berrios testified that, after she reviewed the traffic camera footage, she was not personally able to identify the other occupant's race or gender.

2

Defendant's release and observed that Defendant was wearing a light-in-color hoodie and light-in-color surgical face mask upon his release. *Id.* That footage also appeared to show some sort of logo on the chest of the hoodie.

On November 27, 2021, officers located the Jeep Compass in a Food Lion parking lot on Rosehill Road in Fayetteville. DE 21 at 4. Officers retrieved security footage from the Food Lion. *Id.* Detective Berrios subsequently viewed that footage and observed a single occupant exiting the vehicle and walking towards a residence on Rosehill Road. *Id.*[5] A subsequent search warrant for the vehicle resulted in the recovery of several shell casings from the driver's side floorboard of the vehicle. DE 30 at 3.

Based on (1) Defendant's shared criminal history with the shooting victim, (2) his similar attire to that of the driver of the Jeep Compass on the day in question, (3) his release from a local jail one hour before the shooting, and (4) the Food Lion footage, FPD obtained an arrest warrant on November 30 for Defendant on a charge of attempted first-degree murder, among other charges. *Id.* Defendant was located inside the residence on Rosehill Road on December 7, 2021. *Id.* at 4. He attempted to flee, but was apprehended. *Id.*

Immediately following Defendant's arrest, Detective Berrios sought a search warrant for the residence in which he was arrested. *Id.* In the warrant affidavit, Detective Berrios described the driver of the Jeep Compass as wearing a "white in color hoodie and a light blue face mask." DE 22-4 at 7. Detective Berrios also indicated that the Food Lion footage shows an individual

---

[5] Another law enforcement team, one tasked with investigating the stolen vehicle, reported that, when they viewed security footage from the Food Lion, they observed multiple occupants leaving the vehicle. Detective Berrios testified that she did not review that team's report before seeking the search warrants at issue here. Moreover, there was no evidence presented to suggest that Detective Berrios and the stolen vehicle team viewed the same security footage.

Additionally, although the Food Lion footage does not bear a stamp reflecting the date and time on which it was recorded, Detective Berrios testified that, when she obtained the footage, she was informed that the footage was from November 27, and believed that to be true.

3

walking "toward the area of his residence" on Rosehill Road. *Id.* The affidavit identified Defendant's shared criminal history with the shooting victim, but did not specifically recount the report that the victim had a reputation as a snitch. *See id.* The affidavit also explained that, earlier that day, Defendant had been arrested in that residence on attempted murder charges for his alleged role in the November 24 shooting. *See id.*

A state-court magistrate issued the search warrant. *See id.* at 3. In a bedroom in the residence, officers found two firearms. DE 30 at 4. Subsequent ballistics testing confirmed those firearms matched the shell casings recovered from the Jeep Compass. *Id.* Defendant was federally indicted for his possession of a firearm on December 7, the day of his arrest and the day on which the search warrant was executed, not for any conduct on November 24, the day of the shooting. *See* DE 1.

## II. Motion to Suppress

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). In that regard, warrantless searches are generally unreasonable, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), and a search warrant must be supported by probable cause, *United States v. Harris*, 403 U.S. 573, 577 (1971). Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

When considering a challenge to a search warrant affidavit, a court must be able to conclude that "[s]ufficient information [was] presented to the magistrate to allow for the exercise of independent judgment." *United States v. Lalor*, 996 F.2d 1578, 1580–81 (4th Cir. 1993).

4

Importantly, it is not necessary "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded . . . upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). To that point, search warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). With that in mind, a magistrate's finding of probable cause "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236.

The Motion to Suppress first contends that the search warrant affidavits[6] failed to sufficiently connect the Rosehill Road address with criminal activity. DE 22 at 5-7. The court disagrees. First, Detective Berrios documented footage in which an individual exited the stolen Jeep and walked in the direction of that address. Second, and more importantly, Detective Berrios explained that Defendant was apprehended on attempted murder charges at that address on the same day she sought the search warrant. Those facts sufficiently link the Rosehill Road address with criminal activity. *See United States v. Abraham*, 213 F. App'x 240, 247 (4th Cir. 2007) (finding that sufficient nexus existed between shooting incident and residence even where warrant applicant did not observe illegal activity at residence because applicant learned shooting suspect lived at residence and vehicle involved in shooting was seen at residence on two occasions); *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (observing that "sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought to the defendant's

---

[6] The Motion to Suppress targets two search warrants: one for the Rosehill Road address and one for cellular phones seized from that residence. Because the supporting affidavits are largely identical (and no aspect of the Motion to Suppress challenges any language found in only one of the affidavits), the court will analyze both affidavits together, without distinguishing between them.

5

residence"); *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (joining other circuits in concluding that "nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence").

As the Fourth Circuit has explained, "the use of a gun in the commission of a crime is sufficient to establish a nexus between the suspected criminal's gun and his residence because guns are generally kept in the home." *United States v. Wienke*, 733 F. App'x 65, 70 (4th Cir. 2018). Guns, unlike other contraband, "are not ordinarily expended when used in the commission of [a] crime[]." *Id.* at *71 (citing *Peffer v. Stephens*, 880 F.3d 256, 273 (6th Cir. 2018)). Here, Defendant was suspected of using a gun in the commission of a crime. That establishes a sufficient nexus between his gun and the Rosehill Road address. Moreover, he was apprehended at the same address earlier in the day, and attempted to flee when confronted by law enforcement. That information, presented to the magistrate, was adequate "to allow for the exercise of independent judgment." *Lalor*, 996 F.2d at 1581.

The Motion to Suppress next challenges whether probable cause supported the warrants, based on the notion that "[t]he affidavit simply states, 'driver parking the vehicle and then walking away toward the area of his residence which is within short walking distance,' and therefore fails to identify the driver and/or the residence." DE 22 at 8. This argument reflects a truncated and inaccurate reading of the affidavits, which presented information to the reviewing magistrate in a linear and chronological manner. *See generally* DE 22-4. Defendant had not yet been identified by law enforcement when he was observed in the Food Lion footage. Accordingly, Detective Berrios did not name him in that specific paragraph of the affidavits.

However, a mere two paragraphs later, Defendant is identified. *See id.* at 9. Three paragraphs after that, his arrest at the residence is catalogued. *See id.* Defendant's argument, therefore, is predicated on an erroneous premise and does not support a finding that the affidavits failed to establish probable cause.

Next, the Motion to Suppress contends that the search warrant affidavits contained intentionally or recklessly false information. DE 22 at 8-9. This contention, which formed the primary basis of Defendant's argument at the January 8 hearing, is founded on the notion that Defendant was wearing a light blue (or "Carolina blue") hoodie on the day of the shooting, not a white hoodie. This distinction is legally insignificant.

At the hearing, Detective Berrios testified at length about her investigation. The court finds her testimony credible, and notes that, over the course of the investigation, Detective Berrios studied traffic camera footage, still photos from that footage, Cumberland County jail footage from Defendant's release on November 24, as well as Food Lion footage. Based on her review of this varying footage, she averred in the search warrant affidavits that Defendant's hoodie was "white in color." DE 22-4 at 7. Defendant suggests that the hoodie was actually light blue, but it is not necessary "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded . . . upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks*, 438 U.S. at 165. The affidavits were "drafted by [Detective Berrios, a] nonlawyer[,] in the midst and haste of a criminal investigation." *Ventresca*, 380 U.S. at 108. That Detective Berrios believed the hoodie to be white, when it was perhaps light blue,[7] does not materially undermine the strength of the evidence presented to the magistrate or lead to the conclusion that the magistrate was unreasonable in issuing the search warrants. *See United States*

---

[7] The court notes that no record evidence before it actually establishes the color of the hoodie.

7

*v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011) (reiterating that any falsity must be "material").

Importantly, Detective Berrios' identification of Defendant (and the magistrate's ultimate finding of probable cause) was founded on much more than the color of Defendant's hoodie on November 24. In the affidavit, Detective Berrios explained Defendant's shared criminal history with the shooting victim, the footage that showed an individual walking from the stolen vehicle to the Rosehill Road address, and Defendant's ultimate arrest at that address. Just as importantly, Defendant presented no evidence that, assuming Detective Berrios misstated the color of Defendant's hoodie, such misstatement was made intentionally or recklessly. *See id.*; *see also Franks*, 438 U.S. at 171. To reiterate, probable cause is "a fluid concept," *Gates*, 462 U.S. at 232, one that turns "on the totality of the circumstances," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). When considering all the information presented to the magistrate in this case, a relatively minor distinction as to one of several circumstances does not discredit the magistrate's finding of probable cause.[8]

Finally, the Motion to Suppress includes a series of omissions that Defendant argues renders the affidavits seriously misleading. DE 22 at 9-10. The Motion to Suppress does not meaningfully develop any argument as to the relevance and or materiality of these omissions, and "[m]erely identifying factual omissions is insufficient." *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011). Defendant did not further address these omissions at the hearing. The court thus finds they do not create a basis for suppression.[9]

---

[8] Given the absence of evidence that any misstatement in the affidavits was intentional or reckless, the court would find that, even if the warrants lacked probable cause based on the potential mischaracterization of the color of Defendant's hoodie, the good faith exception to the warrant requirement would apply. *See United States v. Leon*, 468 U.S. 897, 921 (1984).

[9] The Motion to Suppress also suggests that the search warrant was not executed within 48 hours after its issuance, in violation of North Carolina law. *See* DE 22 at 5. The handwritten date of execution (which was changed from December 18 to December 7) appears to be a scrivener's error. Moreover, Defendant fails to explain why, even if the

8

In sum, the court DENIES the Motion to Suppress. The warrant affidavits sufficiently linked Defendant to the Rosehill Road address, and that address to criminal activity. Any falsity in the affidavits (such as the color of the hoodie) was unintentional, as well as immaterial to the magistrate's finding of probable cause. The search warrants were therefore valid, and no evidence seized therefrom will be suppressed.

## III. Motion to Dismiss

The government's destruction of material evidence that is favorable to a defendant constitutes a violation of the defendant's due process rights. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence is that which either "tends substantively to negate guilt [or] tends to impeach the credibility of a key witness for the prosecution." *Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995). "Evidence is material if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Abdallah*, 911 F.3d 201, 217 (4th Cir. 2018) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

When the disputed evidence is not plainly favorable to the defendant – that is, when it is only potentially exculpatory – the defendant must show that the government's destruction of that evidence was done in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). Potentially exculpatory evidence must still be material, meaning that the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). Moreover, when evaluating bad faith,

---

warrant was not executed in accordance with state law (notwithstanding the substantial contextual evidence that it was), such failure would warrant suppression under the Fourth Amendment.

9

"the negligent destruction of evidence, absent more, does not [suffice]." *United States v. Thompson*, 584 F. App'x 101, 103 (4th Cir. 2014).

The Motion to Dismiss contends that FPD's failure to preserve the traffic camera footage[10] from the day of the shooting warrants dismissal of the indictment because that footage purportedly "would show that law enforcement could not identify [Defendant] as [the] suspect." DE 21 at 7. As demonstrated by the court's previous recounting of the factual circumstances that led to Defendant's arrest, this argument does not justify dismissal because it is based on a misapprehension of the investigation of Defendant. Detective Berrios did not identify Defendant using the traffic camera footage. Rather, she examined the shooting victim's criminal history, realized that he had a shared history with Defendant, learned that Defendant had been released from a nearby jail an hour before the shooting, and then observed that Defendant's attire when released appeared to match that in the traffic camera footage.

Critically, Defendant has been indicted for possessing a firearm as a felon on December 7, 2021. *See* DE 1 at 1. December 7 is the date on which FPD served the arrest warrant at the Rosehill Road address. Later that day, FPD executed the search warrant on the residence, and located a firearm. Traffic camera footage from two weeks prior to Defendant's arrest may be relevant background evidence in this matter, and it may be material evidence as to the state charges for which he was arrested, but it is immaterial to the federal indictment because it simply does not bear on whether or not Defendant possessed a firearm as a felon on December 7. *See Abdallah*, 911 F.3d at 217. For that same reason, the traffic footage is not exculpatory as to the instant

---

[10] The Motion to Dismiss also addresses the Food Lion footage, and certain dash camera footage from drivers on the day of the shooting. The Food Lion footage has been produced to Defendant in discovery, and it is unclear that any dash camera footage actually captured the shooting, or even exists. Given that Defendant focused his arguments at the hearing on the traffic footage, the court will do the same, and finds the Motion to Dismiss moot as to the other footage.

offense, or even potentially exculpatory. *See Love*, 57 F.3d at 1313; *Trombetta*, 467 U.S. at 489. Put another way, even if the November 24 traffic camera footage clearly showed someone other than Defendant operating the Jeep Compass, that would not prove or disprove that Defendant possessed a firearm on December 7.

Even if the traffic footage was potentially exculpatory, Defendant has failed to show that FPD failed to preserve that evidence in bad faith. *See Youngblood*, 488 U.S. at 57–58. The court does find that FPD failed to preserve evidence. It further finds that this failure contravened department policy. Detective Berrios conceded as much in her testimony. But the record reflects that this failure by FPD was, at most, negligent; however, "the negligent destruction of evidence, absent more, does not constitute bad faith." *Thompson*, 584 F. App'x at 103. The failure to preserve the traffic footage may have evidentiary implications at Defendant's trial, but it does not justify dismissing the Indictment.

FPD failed to preserve the traffic footage. But, as it concerns the felon-in-possession charge that comprises the Indictment, that footage is not exculpatory. Nor is it material, and the record lacks any evidence of bad faith on the part of the Government. Accordingly, the Motion to Dismiss is DENIED.

**IV. Conclusion**

The court DENIES Defendant's Motion to Dismiss [DE 21] and DENIES Defendant's Motion to Suppress [DE 22].

SO ORDERED this \_\_\_22ⁿᵈ\_\_\_ day of January, 2024.

                                            */s/ Richard E Myers II*
                                            RICHARD E. MYERS II
                                            CHIEF UNITED STATES DISTRICT JUDGE